# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL ACTION NO. 1:25-CV-00440-KDB

| | |
|---|---|
| **MELISSA GANTT,** | |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM AND ORDER** |
| **FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Plaintiff Melissa Gantt's appeal of an unfavorable administrative decision denying her disability insurance benefits under the Social Security Act. Doc. No. 1. Having reviewed and considered the parties' briefs, the administrative record, and applicable authority, and for the reasons set forth below, the Court finds this matter should be remanded to allow the ALJ to more thoroughly explain the basis for her decision. Accordingly, the Court will **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

## I. PROCEDURAL BACKGROUND

On August 31, 2020, Plaintiff Melissa Gantt applied for disability insurance benefits and a period of disability under Title II of the Social Security Act, alleging that she had been disabled since November 14, 2019. Doc. No. 4 (Administrative Record) at 100. Gantt's claim was denied initially and on reconsideration. *Id.* Gantt then requested a hearing before an Administrative Law Judge ("ALJ"), where she was unrepresented by counsel. *Id.* at 58, 131-32. After conducting a hearing, the ALJ, Theresa Jenkins, denied Gantt's application in a decision dated November 1,

2023. *Id.* at 97. The Appeals Council granted Gantt's request for review, and remanded Gantt's application back to the ALJ for further proceedings. *Id.* at 117. ALJ Jenkins held a remand hearing on June 18, 2025. *Id.* at 17. In a decision dated July 31, 2025, the ALJ again denied Gantt's claim. *Id.* at 31. The Appeals Council declined to review that decision, making the ALJ's July 31, 2025 decision the final decision of the Commissioner. *Id.* at 1. Gantt now timely seeks judicial review under 42 U.S.C. § 405(g).

## II.    THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Gantt was disabled under the law during the relevant period.[1] At step one, the ALJ determined that Gantt did not engage in substantial gainful activity from November 14, 2019, her alleged onset date, through December 31, 2022, her date last insured. Doc. No. 4 at 19. At step two, the ALJ found that Gantt had "severe" impairments of "obesity, major depressive disorder, bilateral sciatica, migraine headaches, degenerative disc disease, degenerative joint disease, and deep vein thrombosis (20 CFR 404.1520(c))." *Id.* At step three, the ALJ found that Gantt had no impairment or combination of impairments that met or equaled one of the listed impairments in severity under 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id.* at 20.

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Before proceeding to step four, the ALJ determined that Gantt had the following residual functional capacity ("RFC"):

> to perform "light" work as defined in 20 CFR 404.1567(b) except she can occasionally perform all postural activities and should avoid workplace hazards to include but not be limited to things such as ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts. She can only occasionally use her left lower extremity for pushing, pulling, and operating foot controls. She can stay on task, sustaining attention and concentration for two hours at a time. She can understand, remember, and carry out short but uninvolved instructions and perform routine, repetitive tasks but no work requiring a production rate or demand pace, specifically jobs involving assembling lines, conveyor belts, fast pace, highly automated work environments. She should avoid work environments with concentrated exposure to loud machinery or equipment as well as high vibration equipment and harsh, fluorescent lighting or blinking, fluttering lights. She should avoid work environments with constant changes in a routine setting. She can frequently but not continuously interact with coworkers and supervisors and have only occasional public contact or interactions.

*Id.* at 22.

At step four, the ALJ determined that Gantt has no past relevant work. *Id.* at 30. Finally, at step five, the ALJ concluded that certain jobs existed in significant numbers in the national economy that Gantt could have performed based on her RFC, age, education, and work experience, such as routing clerk, marker, or "a housekeeping cleaner." *Id.* Thus, the ALJ found that Gantt was not disabled under the Social Security Act from November 14, 2019, through December 31, 2022. *Id.* at 31.

### III.    LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). The SSA "provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other

3

things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.*; *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV.    DISCUSSION

In this appeal, Gantt argues that the ALJ did not fully account for the vocational impacts of her migraine headaches in the RFC, requiring a remand. *See* Doc. No. 6 at 4. Specifically, Gantt contends that the ALJ failed to explain the absence of limitations related to likely migraine-related work absences and additional at-work breaks in the RFC, and that the ALJ should have reached an express conclusion on frequency, severity, and duration of Gantt's migraines. *Id.* at 1. The Court agrees.

When a claimant reports a medical condition that is potentially dispositive on the claimant's ability to work, the ALJ must reach an "express conclusion in the first instance" on the issue or explain how the RFC sufficiently includes the claimant's impairments. *Woody v. Kijakazi*,

5

No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023). In *Woody*, the Fourth Circuit reviewed an ALJ's failure to make specific findings on the frequency and severity of the claimant's headaches, despite the claimant reporting that the headaches happened once-per-week, which could preclude full-time employment. *Id.* Although the claimant testified that her headaches were less severe after treatment, the court found that the ALJ's failure to provide "specific factual findings" on whether the headaches were still severe enough to cause absences from work constituted error by the ALJ. *Id.*

Similarly, this Court recently ordered a remand in a case, where, as here, the ALJ failed to sufficiently consider whether the claimant's migraines would cause work absences *Kurfees v. Bisignano*, No. 5:25-CV-00135-KDB, 2026 WL 963777, at *1 (W.D.N.C. Apr. 9, 2026). In *Kurfees*, the Court wrote "[b]ecause the ALJ neither resolved this question nor explained why the RFC nonetheless accommodated [claimant's] migraines (or even included an absenteeism limitation), the Court cannot determine whether the RFC is supported by substantial evidence." *Id.*

Like the claimants in *Woody* and *Kurfees*, Gantt's contentions relating to the frequency, duration, and severity of her migraines, if true, could be preclusive of full-time employment. Gantt reported in July 2022 that she can have "up to maybe four or five" migraines per week, and that she must lie down in a dark, quiet place when she has one. *Id.* at 68, 71. In June 2025, she further reported that the migraines had gotten worse over the last decade, to the point that she experienced them on 15 days per month.[3] *Id.* at 47-48; *see Id.* at 438 (stating that migraines occurred twice a

---

[3] Gantt complained about her migraines at two hearings before the ALJ, one of which came after her date last insured ("DLI"). *See generally* Doc. No. 4 at 37-76. Medical evidence from after a claimant's DLI can be relevant to prove a disability coming before a DLI. *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340-41 (4th Cir. 2012) (overruled on other grounds); *see also Holland v. Kijakazi,* No. 1:20CV850, 2022 WL 595309, at *4 (M.D.N.C. Feb. 28, 2022), *report and recommendation adopted*, No. 1:20CV850, 2022 WL 16901969 (M.D.N.C. Nov. 10, 2022).

month in July 2015); 441, 443, 452 (stating that migraines occurred twice a week in January and July 2016, and February 2018). Yet, at the hearing before the ALJ, the vocational expert stated that anything over one absence a month or 10 percent time off task could preclude Gantt from remaining employed full-time. Doc. No. 4 at 53. Therefore, the ALJ needed to, but did not, make "specific factual findings" on how frequent, long-lasting, and severe Gantt's migraines. Also, the ALJ failed to sufficiently explain how Gantt could avoid frequent migraine-related absences from work in light of her testimony.[4]

Accordingly, the Court will **REVERSE** the Commissioner's ruling and **REMAND** to the ALJ for additional consideration on whether and/or how Gantt's migraines impact her ability to work.

**V.    ORDER**

**NOW THEREFORE IT IS ORDERED THAT:**

The Commissioner's decision denying Gantt's application for disability benefits is **REVERSED**. This matter is **REMANDED** to the ALJ for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 26, 2026

Kenneth D. Bell
United States District Judge

---

Here, there is an "inference of linkage" between her self-reporting at the 2025 hearing as to an increase in the frequency, duration, and intensity of her migraines at that time, and the pre-DLI existence of migraines. *Bird*, 699 F.3d at 341.

[4] Again, Gantt claims that she needs to lie down "multiple times per day" in a dark, quiet place "up to fifteen" days per month. *See* Doc. No. 4 at 47-48; 68.